UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

STEPHEN OSEZELE OSEGHALE,

Petitioner,

v.

BRIAN ENGLISH,

Respondent.

CAUSE NO. 3:26-CV-588-CCB-SJF

OPINION AND ORDER

Immigration detainee Stephen Osezele Oseghale, representing himself, filed a petition for a writ of habeas corpus under 28 U.S.C. § 2241, alleging that he is unlawfully confined in violation of the laws or Constitution of the United States. ECF 1, 6. Pursuant to Section 2254 Habeas Corpus Rule 4, which the court may apply to petitions under § 2241, the court must dismiss the petition "[i]f it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief in the district court."

According to the petition, Oseghale is a citizen of Nigeria who was taken into the custody of Immigration and Customs Enforcement (ICE) on January 9, 2026, upon the conclusion of a federal criminal sentence.[1] He says he was issued an administrative

---

[1] Public records show that in 2022 Oseghale was convicted of federal charges of conspiracy to commit wire fraud and aiding and abetting aggravated identity theft. *See United States v. Oseghale*, No. 0:21-cr-00106-NEB-DTS-2 (D. Minn. terminated Aug. 16, 2022).

order of removal that same day.[2] *See* 8 U.S.C. § 1228(b). He alleges he does not contest his removal and in order to speed up his return to Nigeria, mailed his expired passport into the Chicago ICE Office.

Oseghale attached a copy of the 90-day custody review, which was served on him on April 17, 2026. ECF 1-1 at 11-13. The custody review determined that he would remain in custody because his removal was expected to be effectuated within the reasonably foreseeably future. *Id.* at 11. The Notice to Alien of File Custody Review, advising him of the custody review and telling him he may submit documentation for the review, was served on him the same day. *Id.* at 9-10.

Oseghale signed and submitted his petition on April 24, 2026, just over three months after he was ordered removed, alleging that his continued detention was unlawful for three reasons. First, he complains that he was not removed in the 90-day removal period and argues ICE is purposely delaying his removal. Second, he alleges there was a violation of due process because ICE did not timely provide him with the 90-day custody review required by 8 C.F.R. § 241.4. He alleges the review was two days late and he was not provided with sufficient notice to be able to present evidence for the review. Third, he complains about the conditions of detention, alleging he is subject to limited access to the law library, poor and inconsistent meal times, violations of the Prison Rape Elimination Act in the showers, sub-standard healthcare, and constant

---

[2] The court assumes Oseghale was ordered removed under the expedited procedures in 8 U.S.C. § 1228(b), that allows for an administrative order of removal of noncitizens who were not lawful permanent residents who were convicted of an aggravated felony.

lockdowns. He asks the court to compel the respondents to deport him immediately or to return his Nigerian passport and release him so he can voluntarily leave on his own.

After a noncitizen is ordered removed, the Immigration and Nationality Act (INA) directs that the Attorney General "shall remove the alien from the United States within a period of 90 days," called the "removal period." 8 U.S.C. § 1231(a)(1)(A). Detention during the removal period is mandatory while the government works to effectuate the removal. 8 U.S.C. § 1231(a)(1)(A), (a)(2)(A). According to § 1231(a)(1), the 90-day removal period begins on the latest of:

> **(i)** The date the order of removal becomes administratively final.
>
> **(ii)** If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order.
>
> **(iii)** If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

8 U.S.C. § 1231(a)(1)(B). The court will assume the order became administratively final the day it was issued.[3] Thus, Oseghale was in the removal period until April 9, 2026.

Although the removal period has ended, the statute authorizes further detention for three groups of noncitizens: (1) those who are inadmissible under 8 U.S.C. § 1182, (2) those who are removable under 8 U.S.C. §§ 1227(a)(1)(C), 1227(a)(2), or 1227(a)(4) for certain criminal convictions, or (3) those who have "been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal."

---

[3] Under 8 U.S.C. § 1228(b), an administrative order of removal may not be executed until 14 calendar days have passed from the date it was issued to allow the noncitizen time to seek judicial review, though this period can be waived. It is irrelevant to this order whether Oseghale's removal order was administratively final when it was issued or fourteen days later, so the court accepts Oseghale's assertion that it was final the day it was issued.

8 U.S.C. § 1231(a)(6). All other noncitizens who have not been removed in that 90-day period are to be released subject to supervision. 8 U.S.C. § 1231(a)(3). Oseghale does not contest that he falls within those categories of noncitizens whose detention beyond the removal period is authorized.

For those noncitizens who are subject to continued detention under § 1231(a)(6), the statute seemingly authorizes indefinite detention if their removal cannot be carried out. But the Supreme Court read "an implicit limitation" into the statute, namely that the statute "limits an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States." *Zadvydas v. Davis*, 533 U.S. 678, 689 (2001). In recognition of the Executive Branch's primary responsibility in foreign policy matters and the sometimes sensitive nature of repatriation negotiations that may call for difficult judgments regarding whether removal is reasonably foreseeable, the Supreme Court adopted a "presumptively reasonable period of detention" of six months. *Id.* "After this 6–month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.* at 701.

Oseghale's detention is still in the six-month presumptively reasonable period allowed for the execution of his removal order. The fact that the Supreme Court called this a "presumptively reasonable" period, suggests that the reasonableness may be rebutted. However, even if the presumption may be rebutted, Oseghale has provided no reason to believe his removal to Nigeria cannot be carried out. Instead, he argues

4

that the administrative delay was on purpose, thus making his detention unreasonable. But the Supreme Court crafted the six-month period to account for administrative delays and shields the government from intrusion into administrative decisions in the usual case. Oseghale alleges nothing to take this out of the usual case.

Nor do the alleged procedural irregularities in the 90-day custody review make his continued detention unlawful. Under the regulations, a noncitizen is supposed to receive an initial custody review "prior to the expiration of the removal period," consisting of "a review of the alien's records and any written information submitted in English to the district director by or on behalf of the alien." 8 C.F.R. § 241.4(h)(1). To facilitate the review, the regulations direct that the detainee should be given written notice of the pending records review approximately 30 days in advance so the noncitizen may submit information in writing in support of his release. 8 C.F.R. § 241.4(h)(2).

The exhibits to the habeas petition establish that the initial custody review happened about a week after the removal period concluded and that Oseghale was given notice of the custody review at the same time as he was given the custody decision itself, preventing him from submitting evidence to be considered at the review. "[F]ederal agencies are required to follow their own regulations." *Zelaya Diaz v. Rosen*, 986 F.3d 687, 690 (7th Cir. 2021) (citing *Accardi v. Shaughnessy*, 347 U.S. 260, 268 (1954)); *see also Samirah v. Holder*, 627 F.3d 652, 664 (7th Cir. 2010) ("[R]ules promulgated by a federal agency, which regulate the rights and interests of others, are controlling upon the agency."). Nevertheless, to the extent that these inadequacies amount to a

regulatory violation, they appear to be harmless error. Oseghale does not explain what information he would have presented, had he been given the opportunity to do so. In order to release a detainee at the initial custody review, the reviewing officer must be able to conclude, in addition to other discretionary factors, that:

> (1) Travel documents for the alien are not available or, in the opinion of the Service, immediate removal, while proper, is otherwise not practicable or not in the public interest;
>
> (2) The detainee is presently a non-violent person;
>
> (3) The detainee is likely to remain nonviolent if released;
>
> (4) The detainee is not likely to pose a threat to the community following release;
>
> (5) The detainee is not likely to violate the conditions of release; and
>
> (6) The detainee does not pose a significant flight risk if released.

8 C.F.R. §§ 241.4(e), (h)(3). Oseghale offers no reason why travel documents are not available, other than administrative delay—a factor that is accounted for in the six-month presumptively reasonable *Zadvydas* period. Furthermore, the week delay in conducting the custody review is also harmless, given that the decision was made to continue his detention, and that continued detention is otherwise authorized.

Finally, Oseghale's complaints about the conditions of confinement are not cognizable in a habeas corpus petition. The scope of a habeas petition is limited to questions about the fact or duration of confinement, not the conditions therein. *See, e.g., Robinson v. Sherrod*, 631 F.3d 839, 840–41 (7th Cir. 2011) ("When there isn't even an indirect effect on duration of punishment . . . we'll adhere to our long-standing view that habeas corpus is not a permissible route for challenging prison conditions."); *see also Department of Homeland Security v. Thuraissigiam*, 591 U.S. 103, 114–15, 118 (2020)

(Asylum seeker's habeas petition was properly dismissed given that it sought only an "opportunity to apply for asylum and other applicable forms of relief" and not "release from custody. . . . Such relief might fit an injunction or writ of mandamus . . . but that relief falls outside the scope of the common-law habeas writ."); *E.F.L. v. Prim*, 986 F.3d 959, 965 (7th Cir. 2021) ("E.F.L.'s habeas petition does not 'contest[ ] the lawfulness of restraint' or seek to 'secur[e] release' from custody; it instead vies for her right to 'remain in [the United States] or to obtain administrative review potentially leading to that result.'") (quoting *Thuraissigiam*, 591 U.S. at 117). This is not a basis for release.

Because Oseghale is proceeding without counsel, the court must give his petition liberal construction. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Therefore, he will be given the opportunity to file an amended petition before the court denies the petition.

For these reasons, the court **DISMISSES** the claims regarding conditions of confinement for lack of jurisdiction, **GRANTS** Stephen Osezele Oseghale until **July 27, 2026**, to file an amended petition addressing the issues raised in this order, and **CAUTIONS** him if he does not respond by the deadline, this petition will be denied without further notice.

SO ORDERED on June 26, 2026.

/s/ *Cristal C. Brisco*
CRISTAL C. BRISCO, JUDGE
UNITED STATES DISTRICT COURT

7